IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CAPPIE PONDEXTER, NIKYAMICHA HAMPTON, and CRISHAWN CRESWELL, individually and on behalf of others similarly situated,** )<br>)<br>)<br>)<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**CASHEURONET UK, LLC, CNU ONLINE HOLDINGS, LLC, and ENOVA INTERNATIONAL, INC.,** )<br>)<br>)<br>)<br>**Defendants.** ) | **CASE NO. 1:14-cv-3812**<br><br>**Judge Harry Leinenweber**<br><br>**Magistrate Judge Sheila Finnegan** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF A CLASS AND COLLECTIVE ACTION SETTLEMENT; CONDITIONAL CERTIFICATION OF SETTLEMENT CLASSES; DESIGNATION OF CLASS REPRESENTATIVES AND APPOINTMENT OF PLAINTIFFS' COUNSEL; AND APPROVAL OF THE FORM AND MANNER OF CLASS SETTLEMENT NOTICE**

Plaintiffs Cappie Pondexter, Nikyamicha Hampton, and Crishawn Creswell seek an order (a copy of which is to this memorandum): (1) preliminarily approving the class-wide Settlement Agreement negotiated by Plaintiffs and Casheuronet UK, LLC, CNU Online Holdings, LLC, and Enova International, Inc. ("Defendants"); (2) conditionally certifying the proposed Class for settlement purposes only; (3) designating Plaintiffs as Class Representatives and their attorneys as Class Counsel; (4) approving the form and manner of class notice; and (5) setting a date for a final fairness hearing.

In support of preliminary approval, this memorandum describes Plaintiffs' claims, Defendants' principal defenses, and the proceedings leading up to the proposed settlement of this case. This memorandum also summarizes the principal provisions of the parties' Settlement

Agreement, which is attached hereto as Exhibit 1, including the relief that it provides Class Members. The memorandum also demonstrates that the substantive and procedural requirements have been satisfied for preliminary approval of the proposed settlement under Federal Rule of Civil Procedure 23(e) and 29 U.S.C. § 216(b). Finally, the memorandum explains why conditional certification of the settlement classes is appropriate under Rule 23(b)(3) and 29 U.S.C. § 216(b).

## I. BACKGROUND.

### A. Procedural Background.

On May 23, 2014, the Named Plaintiffs filed this lawsuit, on behalf of themselves and others similarly situated, alleging that Defendants failed to pay them at the correct overtime rate, in violation of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 207, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/4a. More specifically, Plaintiffs alleged that Defendants did not include certain monthly commission payments in their overtime rate of pay, which resulted in Plaintiffs being paid less than one-and-a-half times their regular rate of pay for hours worked in excess of forty in a workweek. *See* Dkt. No. 1.

Shortly after Plaintiffs filed their lawsuit, the parties placed the case in a settlement posture. In August 2014, in an effort to resolve Plaintiffs' claims, Defendants provided Class Counsel with electronic payroll data for persons who were employed at Defendants between May 23, 2011 and June 6, 2014. *See* Exhibit 2 (Wilmes Declaration) ¶3. Plaintiffs' Counsel examined the electronic data and – after analyzing the data – discovered that it was partially incomplete and inaccurate. *Id*. As a result, Defendant hired a third-party consultant – at substantial expense – to assist in extracting the data in a more complete and accurate fashion.

2

Due to numerous difficulties, the second data extraction took substantially longer than the parties initially expected. In March and April 2015, Defendants provided Plaintiffs revised payroll data for all Class Members. Ex. 2, ¶4. Defendants also provided Plaintiffs their calculations showing how much they believed the Class Members were owed for unpaid overtime. *Id*. The parties then scheduled a settlement conference for May 11, 2015 with Magistrate Judge Finnegan.

As it turned out, Defendants' initial overtime calculations were substantially overstated on account of Defendants' expert using the wrong formula to calculate overtime premium pay. *Id*. ¶6. Once Defendants discovered the error, the parties had to reschedule their May 11, 2015 settlement conference, so that the Defendants could recalculate damages. The settlement conference was rescheduled for July 7, 2015.

In advance of the July 7, 2015, settlement conference, Defendants recalculated the overtime shortfall, and Class Counsel hired a third party expert to double check the Defendants' calculations.[1] *Id*. ¶7. Ultimately, after reviewing Defendants' payroll records, Plaintiffs calculated that the overtime premium shortfall that resulted from Defendants not including all creditable payments in Class Members' regular rate of pay, for the time period May 23, 2011 to June 6, 2014, was approximately $204,000.00. *Id*.

On July 7, 2015, the parties proceeded to a settlement conference with Judge Finnegan and agreed to settle the case for a total settlement payment not to exceed $440,000. *See* Ex. 1.

**B.    The Terms Of The Parties' Agreement.**

The Settlement contemplates that the Court will certify the following Settlement Class:

---

[1] Even after Defendants' second data extraction, there remained inaccuracies in the data which would be expensive to correct. However, Plaintiffs' data analyst determined that these inaccuracies affected less than two percent of the payroll records and would not substantially affect the total overtime shortfall calculation. Ex. 1, ¶X.

> all individuals who worked for one of the Defendants between May 23, 2011 and June 6, 2014, who were paid on an hourly basis, and who, during that time, worked a total of more than forty hours in a single workweek according to Defendants' payroll records.

Ex. 1, § II.

The parties' Settlement Agreement creates a $314,000 Settlement Fund to compensate Plaintiffs and Class Members for their FLSA and IMWL claims. *Id.* Additionally, the Agreement provides that Defendants will pay up to $22,000 for settlement administration costs, $6,000 for incentive awards, and up to $98,000 for Class Counsel's attorneys' fees and litigation expenses. *Id.* § IV. 3 & 7.

The entire $314,000 will be mailed to Class Members who do not opt-out of the Settlement, and none of that money will revert to Defendants. *Id.* § IV. 6. Class Members do not have to return a claim form to obtain a settlement payment, and if any settlement checks remain uncashed 90 days after the first round of payments, then those uncashed checks will be redistributed in a second round of payments to Class Members who cashed their first check. *Id.* If any money remains in the Settlement Fund 90 days after the second round of checks are mailed, then that money will be distributed to the Chicago non-profit organization, Women Employed. *Id.* § IV. 8.

Except for those Class Members who timely and properly exclude themselves, as set forth in the Class Notice (attached as Exhibit B and C to the Settlement Agreement), all Class Members will be bound by the final approval order, the judgment and the release set forth in the Settlement Agreement. *See* Exhibit 3. Such Class Members will grant Defendants a release as specified in Section IV. 4. A. of the Settlement Agreement. *Id.*

**II. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED, AND NOTICE OF ITS TERMS PROVIDED TO THE CLASS, BECAUSE THE PROPOSED SETTLEMENT CLASS IS CERTIFIABLE UNDER THE FLSA AND RULE 23(b)(3) AND BECAUSE THE PROPOSED SETTLEMENT FALLS WELL WITHIN THE RANGE OF POSSIBLE APPROVAL.**

"District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing."). *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). The first hearing merely requires the Court to make a "preliminary fairness review." *Manual for Complex Litigation* § 21.633 (4th ed. 2004).

The proposed settlement in this case easily falls within the "range of possible approval." Its terms are fair, reasonable, and adequate; the proposed Settlement Class satisfies the criteria set out in Rule 23(a) and (b)(3); and the proposed form and manner of class notice are appropriate and satisfy due process.

**A. Preliminary Approval Of The Settlement Is Appropriate.**

"'[I]n any case there is a range of reasonableness with respect to a settlement.'" *In re Michael Milken and Assocs. Sec. Litig.,* 150 F.R.D. 57, 66 (S.D.N.Y. 1993) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972) (Friendly, J)). The monetary relief provided in the proposed Settlement places it, taken as a whole, easily within "the range of possible approval."

**1. The Proposed Monetary Relief Is Reasonable.**

The FLSA requires an employer to pay an employee one-and-a-half times their regular rate of pay for hours worked in excess of forty in a workweek. 29 U.S.C. § 207. In the case of a willful violation, the employer must pay two times the amount of wages owed. 29 U.S.C. § 216.

In addition, an aggrieved plaintiff is entitled to recover his or her attorneys' fees and costs. *Id.* The IMWL also requires an employer to pay an employee one-and-a-half times their regular rate of pay for hours worked in excess of forty in a workweek. 820 ILCS 105/4a. As a penalty, the IMWL provides that an employer must pay two-percent of the outstanding overtime wages for each month that the wages are overdue, and it allows a prevailing plaintiff to recover attorneys' fees and costs. 820 ILCS 105/12(a).

In this case, Plaintiffs allege that Defendants did not correctly include commissions, shift premiums, payments for sales contests, and other miscellaneous payments in the Plaintiffs' "regular rate of pay" when calculating overtime premiums. As a result, according to Plaintiffs, their overtime rate was lower than it should have been. Plaintiffs maintain that the out-of-pocket losses stemming from these alleged violations, for the time period May 23, 2011 to June 6, 2014, is approximately $204,000.00. Ex. 2, ¶7. The Settlement provides that Class Members will be paid 155% of that total, or $314,000.00.

This outcome is more than reasonable, particularly considering the stage of the litigation and the costs and the risks that Plaintiffs face if they chose to go forward. Defendants have argued that their overtime violations were not willful, so that Plaintiffs would only be permitted to go back two years (instead of three) on their FLSA claims. Additionally, at the parties' settlement conference, Defendants argued that Plaintiffs' overtime shortfall calculation was overstated because Defendants paid more in overtime premium than the law required in certain workweeks. If Defendants prevailed on either of these arguments, then the value of Plaintiffs' claims would be reduced.

### 2. The Agreed-Upon Attorney's Fees Are Reasonable And Within The Range Of Possible Approval.

Under the Settlement Agreement, subject to the Court's approval, Plaintiffs' Counsel will petition the Court for $98,000 to reimburse their litigation costs and as attorneys' fees. Ex. 1, § IV. 7. Plaintiffs' request, which is less than 25% of the amount created by the negotiated settlement, is well below the market rate of Plaintiffs' attorneys services, had their fee been negotiated with the purported class at the outset of the litigation.[2] *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (standard "benchmark" of 25% of common fund, paid from the fund, is fair and reasonable); *In re Synthroid Marketing Litigation*, 264 F.3d 712, 718 (7th Cir. 2001) ("When deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *Buckholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (holding that one-third of a common fund constitutes a reasonable attorneys' fee); *McMahon v. Olivier Cheng Catering & Events, LLC,* No. 08 CV 8713, 2010 WL 2399328, *7 (S.D.N.Y. March 3, 2010) (same); *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, 97 C 7694, 2001 WL 1568856, *4 (N.D. Ill. Dec. 10, 2001) (same).

### 4. Class Action Fairness Notice.

Defendants will cause notice of the proposed settlement to be served under the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1715. The CAFA Notice will be sent via overnight courier to the Attorney General of the United States and to the attorneys general of all

---

[2] This amount is approximately $17,000 less than Class Counsel's lodestar to date, and Class Counsel has a significant amount of additional work to do in obtaining final approval of the settlement, coordinating with the Settlement Administrator during the notice period, and speaking with Class Members about the case. Ex. 2, ¶12.

states and United States territories where Class Members reside. The CAFA Notice will be sent within ten days after filing of the Settlement Agreement with the Court.

### B. Conditional Certification of the Settlement Classes is Appropriate.

Settlement classes "afford[] considerable economies to both the litigants and the judiciary and [are] also fully consistent with the flexibility integral to Rule 23," *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 794 (3d Cir. 1995), and they have become "a stock device" for resolving major multi-plaintiff litigation. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618 (1997). The proposed Settlement Classes in this case fully satisfy the criteria set forth in Rules 23(a) and 23(b)(3) as well as 29 U.S.C. § 216(b).[3]

#### 1. The Requirements Of Rule 23(a) Are Satisfied.

The proposed class in this case satisfies each of the four "class-qualifying criteria," *Amchem*, 521 U.S. at 621, specified in Rule 23(a).

Numerosity is satisfied because there more than one-thousand class members.

Commonality is likewise well founded. The common issue of law and fact in this case is whether Defendants were required to include payments for commissions, shift premiums, and other miscellaneous payments in the Class Members' regular rate for purposes of calculating their overtime rate of pay.

The typicality criterion also is satisfied. The claims of the Named Plaintiffs and the claims of absent Class Members all "arise from the same practice or course of conduct . . . and . . . are based on the same legal theory," *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983), namely that

---

[3] While Defendants request that a settlement class be conditionally certified, they reserve any and all defenses to Rule 23 class certification in the event that the settlement class proposed herein is not fully and finally certified.

Defendants failed to include all remuneration paid to Plaintiffs when calculating their overtime pay.

Fourth and last, the requirement of "adequacy" is satisfied: there are no disabling conflicts between the Named Plaintiffs and the class, there are no issues of allocation between present and "future" claimants, and Plaintiffs' attorneys are experienced and accomplished in class litigation. Ex. 2, ¶9.

### 2. The Requirements Of Rule 23(b)(3) Are Satisfied.

Rule 23(b)(3) requires both "predominance" and "superiority." Both are satisfied here. The Class Members have alleged the same claims under the IMWL. The individual prosecutions of claims by more than one-thousand Class Members would not be feasible given the relatively small size of most Class Members' individual damages claims. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").[4]

### 3. The Requirements of 29 U.S.C. § 216(b) Are Satisfied.

Finally, the Class Members' claims can be certified under the FLSA because all such class members are similarly situated. 29 U.S.C. § 216(b). To determine whether Class Members are similarly situated, the Court must consider: "(1) whether the plaintiffs share similar or disparate employment settings; (2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness and procedural concerns." *See Jirak v. Abbott Laboratories, Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008).

---

[4] Because the Court is confronted with a request for settlement-only certification, it "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, all Class Members are non-exempt employees who worked at Defendants and were not paid the correct overtime rate for all hours worked in excess of forty in a workweek. Plaintiffs contend that Defendants consistently failed to include certain payments in the Class Members' regular rate of pay, thus rendering Class Members similarly situated and undercutting any individualized defenses. Additionally "fairness and procedural considerations, including the number of plaintiffs in this case and the effectiveness of allowing them to pool their resources for litigation . . . weigh in favor of collective treatment." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994 (N.D. Ind. 2010). For these reasons, certification of the Overtime Class under 29 U.S.C. § 216(b) is appropriate.

### C. The Proposed Form And Manner Of Class Notice Are Appropriate And Satisfy Due Process.

The proposed Class Notice (attached as Exhibit B and C to the Settlement Agreement) is based on the model form recommended by the Federal Judicial Center. The proposed Notice informs Class Members, of the following: (a) the claims in this case and the claims that Class Members will forfeit if they participate in the Settlement; (b) the material terms of the proposed Settlement; (c) Class Members' rights under the proposed Settlement; (d) how to get money from the Settlement; (e) the amounts that will be requested in attorney's fees and litigation expenses; and (f) the answers to questions commonly asked by Class Members about class actions and the process by which a Court considers approval of a proposed class action settlement.

Under the terms of the Settlement Agreement, subject to preliminary approval by the Court, the Plaintiffs' Attorneys will send the Class Notice to each Class Member by first-class mail. The manner and form of proposed notice fully complies with the requirements of Due Process and Rule 23.

## Conclusion

Because the parties' Settlement Agreement fully comports with the requirements set out in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure as well as 29 U.S.C. 216, the Court should preliminary approve the agreement and enter the proposed order attached hereto as Exhibit 3.

Respectfully submitted,

/s/Christopher J. Wilmes_____
One of the Attorneys for the Plaintiffs

Matthew J. Piers
Christopher J. Wilmes
HUGHES, SOCOL, PIERS, RESNICK & DYM, LTD.
Three First National Plaza
70 West Madison Street
Suite 4000
Chicago, Illinois 60602